IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SCOTT D WHITE,

    Plaintiff,
v.                                                      CASE NO. 1:05-cv-00103-MP-AK

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.   PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on December 4, 2001, alleging a disability onset date of June 6, 2000, because of chronic back pain, chronic migraine headaches and Bipolar disorder.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on May 26, 2004, and entered an unfavorable decision on February 22, 2005.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.

This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had bipolar disorder, which was severe, but that it did not meet the Listings of Impairments requirements. (R. 21). He also found that Plaintiff's allegations regarding his limitations were not credible because diagnostic testing failed to confirm any musculoskeletal impairment or exertional limitations and based on the testimony of the medical expert, Plaintiff's mental condition did not preclude employment. (R. 20). Further, the medical evidence showed that Plaintiff failed to maintain consistent treatment and prescribed medication for his diagnoses. (R. 20).

The ALJ also based his decision on Dr. Chodosh's assessment regarding his physical ability to do work and on the assessment of Dr. McKeown as to his mental abilities. (R. 20).

Thus, the ALJ found that Plaintiff had no exertional limitations, a good ability to understand, remember, and carry out detailed, but not complex job instructions and to understand, remember and carry out simple job instructions. (R. 21). He had a good to fair ability to behave in an emotionally stable manner, a fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember and carry out complex job instructions, maintain personal appearance, relate predictably in social situations and demonstrate reliability. He had a poor (limited, but not totally precluded) ability to function independently and works best out of direct contact with the public in

simple 1-2 step jobs. (R. 20). The vocational expert advised the ALJ that these limitations did not preclude Plaintiff from performing his past relevant work as a grocery bagger and lawn service laborer. (R. 20).

**C.    ISSUES PRESENTED**

Plaintiff raises the following issues:[1] (1) the ALJ erred in failing to attach a psychiatric review technique form; (2) the ALJ did not have substantial evidence to support his decisions regarding the treating physicians, i.e. failing to articulate his reasons for rejecting or giving less weight to treating physicians than to non-examining physicians, particularly the opinions of Drs. Peysaf and Ivey; (3) the ALJ did not articulate adequately his reasons for rejecting the opinion of Dr. Nazario, the consultative examiner, about Plaintiff's employability; (4) the ALJ failed to articulate his reasons for rejecting the opinion of Dr. Chodosh, who expressed his doubts about Plaintiff's ability to relate normally to others; (5) the ALJ failed to articulate his reasons for rejecting Plaintiff's complaints of pain; (6) the ALJ failed to find that Plaintiff meet the requirements of Listing 12.04; and (7) the ALJ failed to pose complete and accurate hypotheticals to the vocational expert.

The government responds that (1) the ALJ is not required to attach a psychiatric review form by new regulations; (2) although the record supports severe bipolar disorder, it does not support severe limitations resulting from this disorder, such that Plaintiff does not meet any of the "B" or "C" criteria of the listing, and GAF scores alone

---

[1] The undersigned renumbered Plaintiff's issues and separated them for ease of discussion.

are not conclusive of such a finding; (3) there were contrary reports in the record which suggested that Plaintiff's allegations of severe back pain were not credible (Dr. Ting treated him only conservatively and Dr. Chodosh had normal findings, including x-rays which showed minor disc space narrowing); and (4) the RFC utilized by the ALJ and included in the hypothetical to the vocational expert is supported by the RFCs in the record prepared by the medical expert and the state agency physicians and the physical findings of Dr. Chodosh.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

D.   **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86

F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

    1.    Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E. **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Objective medical evidence of Plaintiff's alleged back condition shows at most "minor disc space narrowing," in an otherwise "unremarkable" x-ray. (R. 157-158). Range of motion tests were all normal (R. 159-164, 227) and the only treatment Plaintiff

has received has been conservative (muscle relaxers, anti-inflammatory medication, and heat). (R. 142-144, 227). The consultative examination by Dr. Lance Chodosh found no exertional limitations and all test results were normal. (R. 159-169).

Treatment of Plaintiff's mental condition show that his first bipolar diagnoses was by a nurse practitioner at Memorial Healthcare Services, whom he saw once a month for approximately one year. (R. 116-141). His primary complaints were depression and sleeplessness or over sleeping, but he also reported feeling better when he was working. (R. 124, 127-128).

He was referred by Memorial to Henderson Mental Health Center for additional therapy, but he missed several appointments and the therapy ended. (R. 147-152).

On July 17, 2002, he was hospitalized at Meridian for suicidal ideation and reported that he had been off his medications for at least 2 to 3 months. (R. 165-181). He was hospitalized for 24 hours.

In July 2003, he reported to Trenton Medical Center that he had been off his medications for nearly one year [which would have been shortly after his previous hospitalization at Meridian], and then again in April 2004, when he reported that he had missed his medications for several weeks. (R. 227-232, 249-259).

His treatment at Trenton was by a nurse practitioner and his diagnoses of bipolar appears to have been based on a self-report and reference to his previous treatment at Memorial, which was also provided by a nurse practitioner. (See R. 228) (an additional diagnosis of schizophrenia appears in these treatment notes, but there is nothing else in the record to support such a finding).

The ALJ ordered two consultative examinations:  Dr. Chodosh examined Plaintiff's back (see supra), and Dr. Nazario did a mental evaluation.  (R. 153-156).  Dr. Nazario found Plaintiff to be severely depressed, without psychotic features, and based on Plaintiff's report of a bipolar diagnosis, Dr. Nazario found him to "appear to meet the criteria."  (R. 156).  He also found him "able to concentrate, able to understand and follow directions.  He may experience difficulty interacting with others appropriately given his emotional state.  It is likely that this condition would interfere with the ability to secure and sustain gainful employment."  (R. 156).  He opined that he would benefit from psychiatric intervention and his prognosis was guarded.  (R. 156).  Plaintiff reported to Dr. Nazario that he was on Effexor 300 mg a day; Depakote 2000 mg a day; Zyprexa 10 mg a day; and Trazadone 200 mg a day.  (R. 154). **[Interestingly, he presented at Trenton Medical Center on July 17, 2002, claiming that he had been off his medications 2 to 3 months]**

The non-examining physicians, Dr. Bee, a state agency doctor, and Dr. Doug McKeown, hired as an independent medical expert, found no such limitations.  Dr. Bee even opined that the diagnoses of bipolar disorder was not supported by the evidence since he had reported only depression, and that Dr. Nazario's finding that he would not be able to interact appropriately was inconsistent with his own report that Plaintiff was pleasant and cooperative during the interview.  (R. 206-207).  Thus, in her Mental Assessment she found him only mildly to moderately limited in some of the B criteria. (R. 196-203).

Dr. McKeown prepared a Psychiatric Review Technique Form and found Plaintiff

mildly to moderately limited in some of the B criteria and to have none of the C criteria, especially not to have episodes of repeated decompensation since he had only been hospitalized briefly twice. (R. 233-246). He also prepared a mental assessment of ability to do work related activities and noted that his ability to make occupational adjustments was fair; poor insofar as functioning independently; fair in making personal-social adjustments; and good to fair as far as making performance adjustments. (R. 247-248).

## F.   SUMMARY OF THE ADMINISTRATIVE HEARING (held May 26, 2004)

Plaintiff appeared with his present attorney. (R. 270). Plaintiff was 33 years old at the time of the hearing (R. 295) and was married, his wife draws disability for mental problems, and they both live with his grandfather. (R. 277-278). His two children were awarded to his parents until they reached adulthood because of allegations of neglect and sexual assault (presumably by Plaintiff, although this is unclear). (R. 277-278). The ALJ explained that the inconsistency in opinions between agency medical experts, who disagreed with the consultative examiner on whether Plaintiff actually had bipolar disorder or not, convinced him to retain a medical expert. (R. 274-275). The ALJ was reluctant to rely on the diagnosis of a nurse only, who seems to be the other medical source besides Dr. Nazario who thought Plaintiff had bipolar disorder. (R. 275). Plaintiff worked at Publix bagging groceries for a year and a half, but quit "because I was really depressed, didn't feel like working." (R. 279). His depression is the primary reason he could not work, and admits that he has never been treated by a doctor for it, only a nurse practitioner. (R. 282). He says he cannot afford a doctor. (R. 283). He

visits the nurse once a month for about half an hour and she monitors his medicine which helps him sleep, but he would like to try inpatient treatment. (R. 284). The nurse has not suggested it. (R. 284). Plaintiff also alleges to suffer from back pain which he says is scoliosis on top of a compressed disc. (R. 284). He spends his days sitting on the computer or laying on his bed watching television. (R. 286). He also smokes, which his grandfather pays for. (R. 287).

The vocational expert was asked to assume a 33 year old, tenth grade education, moderately limited in ability to remember detailed instructions, carry out detailed instructions. Moderate or limited ability to complete a normal work day work week without interruptions from psychological based symptoms. And to perform at a consistent pace without an unreasonable number of lengthy rest periods. Moderately limited in ability to set realistic goals or make plans independently of others. But nevertheless able to meet mental demands as well as structured task activity. (R. 295). The expert said he could perform past relevant work as a bagger or lawn services laborer, as well as a surveillance system monitor or a photo machine operator, which exist in significant numbers in the national economy. (R. 296). The ALJ and counsel determined to let a medical expert resolve the issue of conflicting diagnoses by reviewing the file and having a telephone conference. (R. 299).

**G.   DISCUSSION**

   a)   Psychiatric Review form

As the commissioner notes, the ALJ is no longer required to attach the form referenced by Plaintiff, and instead, in the present case he used the services of a

medical expert. 20 CFR §404.1520a. Under the current regulation, the ALJ must apply the technique for assessing a mental condition, as set forth in the review form, in his decision, but that the '"standard document" may be completed by a medical expert. 20 CFR §404.1520a(e)(2)-(3). Thus, there is no merit to this ground.

      b) <u>Treating physicians</u>

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991), (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986); <u>Marbury v. Sullivan</u>, 957

F.2d 837, 841 (11th Cir. 1992).

Plaintiff is correct that the ALJ did not give an explicit reason for rejecting the opinions set forth in the medical evidence from Plaintiff's treating sources (Memorial Healthcare System, Meridian, and Trenton Medical Center). However, for the following reasons the undersigned finds that any error made by the ALJ in his assessment of the evidence was harmless.

A treating physician is defined as a "medical source who provides [the claimant] or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 CFR §404.1502. Acceptable medical sources are licensed physicians, psychologists, optometrists, and pediatrists. 20 CFR § 404.1513. Other sources may be used to show the severity of the impairment and how it affects the ability to work, which include nurse practitioners, physician's assistants, naturopaths, chiropractors, and therapists. 20 CFR § 404.1513.

A review of the records submitted by Memorial and Trenton show that the examination, diagnoses and treatment plans for Plaintiff were done by a nurse practitioner. The Commissioner did not address or brief this specific issue and no Eleventh Circuit cases were discovered in independent research. However, a number of other courts have held that a nurse practitioner is not an acceptable medical source and their opinions are not entitled to the weight accorded a treating physician. <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 (2nd Cir. 1983); <u>Winckler v. Barnhart</u>, 2006 WL 3612514 (9th Cir.). This is true even where the records are countersigned by a physician, but there is no evidence that the physician ever actually examined the

patient.  Davis v. Massanari, 2001 WL 34043759 (D. Ore.); Daughtry v. Barnhart, 347 F.Supp. 2d 1135, 1140 (M.D. Ala. 2004).  In fact, opinions of nurse practitioners are not entitled to greater weight than a non-examining physician or one time consulting physician.  Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006) (nurse practitioner's opinion accorded treating physician weight only if part of a treatment team which included a physician whose actual participation in the care of the patient gave treating source status to the whole team).  There is no evidence or indication in the treatment notes that either Dr. Ivey or Dr. Worthalter ever examined Plaintiff themselves or did anything with regard to his treatment beyond signing off on the nurse practitioner's notes.

However, such evidence should be considered, and if rejected, the ALJ should articulate the basis of his rejection, but any such error is harmless if another factfinder would not have decided the issue differently.  See Whitford v. Barnhart, 133 Fed. Appx. 338 (9th Cir. 2005) (nurse practitioner's opinion should be treated as lay opinion); Martin v. Barnhart, 2006 WL 3913314 (D. Utah) (ALJ should not completely disregard opinion of nurse practitioner, even if not considered a treating source, but error was harmless where contrary medical evidence supported his decision).

In his decision, the ALJ referenced mental health treatment by a nurse practitioner at Memorial Healthcare Systems (R. 17) and a psychiatric evaluation by a nurse practitioner at Trenton Medical Center.  (R. 18).  At the hearing, the ALJ explained that he considered the diagnosis of bipolar disorder by the nurse practitioner at Trenton to not be very helpful, stating, "They got a nurse over there who seems to be

trying to act like a doctor, so that's not going to be very helpful." (R. 275).

Thus, finding that the medical evidence from the treating sources information did not fully apprise the ALJ of Plaintiff's condition, he properly obtained evidence from a consultative examiner and, in this case, a medical expert. See 20 CFR §404.1512. The opinions of Dr. McKeown, as well as the non-examining physician, whose opinion the ALJ relied upon (Dr. Bee), and to a partial degree, the opinion of Dr. Nazario, all support the ALJ's decision that Plaintiff's mental condition was not disabling. (See R. 18, 20). In further support of the ALJ's decision is his finding that Plaintiff frequently did not take his medication and was inconsistent in his treatment. Indeed, his more serious episodes of suicide and depression followed long periods of being off his medication. (See R. 165-181, 227-232, 249-259). A claimant's refusal to follow prescribed medical treatment without a good reason will preclude disability, unless poverty can excuse non-compliance. Ellison v. Barnhart, 355 F.2d 1272, 1275 (11th Cir. 2003). Although Plaintiff claimed lack of insurance and money at the hearing as good cause for failing to seek treatment and stay current on his medications, he was referred to the Levy County Health Department after one hospitalization and told they would provide his medication (R. 181), which is judicially noted to be a common community practice, and he admitted that his grandfather bought him cigarettes daily. (R. 287). When pressed by the ALJ to explain why he did not have his grandfather pay for his medication rather than his cigarettes, he had no answer. Plaintiff explained later that the pharmacy marked his prescriptions as "low income" and charged him $5.00 rather than $23.00. (R. 293). The ALJ obviously did not find this explanation sufficient since he further found that Plaintiff's

failure to follow prescribed treatment convinced him that Plaintiff's allegations of severity and limitation were not totally credible. (R. 20).

In summary, the ALJ did not fully articulate his reasons for rejecting the opinions of the two nurse practitioners, but they are not treating physicians and therefore their opinions were not entitled to greater weight than consultative or non-examining medical sources. Nonetheless, the ALJ erred in not explaining this rationale in his decision, but this error was harmless since there was contrary and substantial evidence to support his findings.

      c)     Dr. Nazario's opinion

Plaintiff argues that the ALJ picked only those portions of Dr. Nazario's opinion that bolstered his own opinion and ignored, without articulating why, the remaining portions of the doctor's opinion that were not being adopted. The Commissioner does not address this argument at all in the brief.

In social security disability benefits cases, generally, the opinions of examining physicians are given more weight than non-examining physicians, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) are given more weight than non-specialists. See 20 CFR § 404.1527(d)(1)-(2), (5). The opinion of a non-examining physician *alone* does not constitute substantial evidence to support the ALJ's decision. Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990). Thus, when the ALJ rejects the opinions of an examining medical source in favor of a non-examining physician, he should obtain additional information. Johnson v. Barnhart, 138 Fed. Appx.

266 (11th Cir. 2005).  In the present case, the ALJ obtained the services of an independent medical expert to assist him in resolving conflict in the record, i.e. whether or not Plaintiff suffered from bipolar disorder and this limited his ability to work.  (See R. 274-275).  In the opinion of the undersigned this was all that was required of the ALJ to provide a record supportive of his decision.

Further, as noted *supra*, Dr. Nazario's examination was two weeks before Plaintiff presented at a hospital complaining about his increased symptomology and that he had been off his medications for several months.  He apparently was not honest with Dr. Nazario during his examination when he told him he was on a daily medicine regimen.

    d)    <u>Dr. Chodosh's opinion</u>

Plaintiff complains that the ALJ rejected the opinion of Dr. Chodosh, particularly his statement about Plaintiff's ability to relate to others.  The ALJ sent Plaintiff to Dr. Chodosh to evaluate his reports of back pain.  Dr. Chodosh said three times in his report that Plaintiff's mental status was "being evaluated separately by a mental health professional for these problems," (R. 159), "history of mental illness, assessment of this deferred to mental health professionals," (R. 162), and  "I am unsure about his ability to relate normally to others-assessment deferred to mental health professional."  (R. 162).  There is no merit to Plaintiff's argument that the ALJ should have accepted this statement as an opinion on Plaintiff's mental health.

    e)    <u>Pain and Plaintiff's credibility and the hypothetical to the VE</u>

Plaintiff claims that the ALJ failed to consider his back and migraine pain and did

not adequately explain his reasons for finding his subjective complaints not credible.

The government responds that there were several contrary medical opinions to suggest that Plaintiff's allegations of severe pain were not credible. One of his treating physicians, Dr. Ting, treated him only conservatively with heat and mild medications. Also, Dr. Chodosh's testing resulted in normal findings, including x-rays which showed minor disc space narrowing. Another non-examining physician attributed no exertional limitations to any of Plaintiff's physical complaints. Thus, the record was devoid of any objective medical evidence to support a back condition that would reasonably be expected to give rise to severe pain.

Plaintiff points to evidence in the record regarding treatment for Plaintiff's back, but does not argue or cite to the record for medical evidence supporting a severe condition resulting from Plaintiff's migraine headaches. While there are some treatment notes from Trenton reflecting complaints and prescriptions for migraines, (R. 223, 226, 255), there is nothing in the record to support this being a severe or ongoing condition.

Further, the ALJ may properly rely on a Plaintiff's self-reported daily activities as proof of limitation and Plaintiff describes a number of activities that did not support a day filled with severe pain, such as driving his grandfather around, working in the yard, and sitting on the computer for 10 to 12 hours a day.

Insofar as Plaintiff claims that pain should have been included in a hypothetical to the vocational expert, the ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). Further, when an ALJ finds that a person can perform their past relevant work,

he is not required to use vocational expert testimony.  Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996); Barrett v. Chater, 38 F.3d 1019, 1024 (8th Cir. 1994).  Thus, any errors alleged with regard to a hypothetical under such circumstances would be irrelevant.  Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994).

    f)    Listing 12.04

Plaintiff claims that the only medical evidence which does not support a finding that his mental condition meets Listing 12.04 is that of one non-examining physician. Plaintiff claims that the ALJ concedes that he meets the requirements of 12.04 A (1) and (3), but he contends that he also meets the "C" criteria of Listing 12.04 because he has had two episodes of decompensation referring to his two hospitalizations.

Actually, the ALJ only found that Plaintiff's bipolar disorder was severe, he did not treat Plaintiff's depression as a separate issue.  Further, the required level of severity for these disorders [affective disorders] is met only when the requirements in A **and** B are satisfied or when the requirements in C are satisfied.[2]

---

[2] A.3 Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); **AND**

    B.  Resulting in at least two of the following:
        1.  Marked restriction of activities of daily living; or
        2.  Marked difficulties in maintaining social functioning; or
        3.  Marked difficulties in maintaining concentration, persistence, or pace; or
        4.  Repeated episodes of decompensation, each of extended duration **OR**

    C.  Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

As the ALJ found, the medical evidence does not support a finding of marked limitation in any of the functional categories known as "B" criteria and the reports of Dr. Doug McKeown and Dr. Bee supported this finding. Also, even Dr. Nazario found Plaintiff able to take care of his personal needs, able to concentrate and follow directions and Plaintiff's self described daily activities did not indicate a markedly limited functional level. (R. 19). Dr. McKeown addressed the "C" criteria and found none. (R. 19, 244). Thus, there is no medical evidence of record supporting Plaintiff's contention that he meets Listing 12.04.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this __2nd__ day of February, 2007.


                **s/ A. KORNBLUM**
                **ALLAN KORNBLUM**
                **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

---

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**